# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT,

AT THE

## JANUARY TERM, 1884.

---

## NORTHERN PACIFIC R. R. CO. *v.* MAJORS.

CONGRESSIONAL GRANT.— A grant of public land may be made so as to vest an indefeasible and irrevocable title by an act of congress, as well as by a patent issued in pursuance of such act.

*An act of congress granting lands to the Northern Pacific Railroad Co.— Construction of.*— Section 3 of the act of congress granting lands to aid in the construction of the Northern Pacific Railroad, approved July 2, 1864, operated as a conditional grant *in præsenti* of certain sections to be afterwards located. Such locations depended upon the route of the road, and until such route was designated in the manner prescribed by the act, the title of the company did not attach to any specific tracts. After such route was settled the location became certain, and the title of the company attached to the particular sections granted as of the date of the approval of the act, as fully as if such particular sections had been designated in such act.

The provisions of sections 5, 6, 8, 9 and 20 of such act, imposing certain conditions on the company, do not affect the creation or vesting of the estate granted by the act. They are simply conditions subsequent, which render the estate liable to be defeated for default on a breach in the performance of such conditions. Upon the breach of such conditions, congress alone has power to declare or take advantage of a forfeiture.

Section 4 of such act, providing that when "such company shall have twenty-five consecutive miles of any portion of said railroad completed, . . . patents of deeds shall be issued to said company, confirming to said company the right and title to said lands," and "from

time to time, whenever twenty-five additional consecutive miles shall have been constructed and completed, . . . then patents shall be issued to said company conveying the additional sections of land," does not limit or restrict the estate granted by section 3 of such act — the effect of the patent issued in pursuance of such section is simply to confirm the title of the company as fast as certain portions of the road are completed, and render it absolute and unconditional.

*A grant of public land by act of congress is the highest evidence of title.*— It imports livery of seizin and possession, and is sufficient to sustain ejectment.

## Appeal from Third District, Lewis and Clarke County.

This is an appeal from a judgment entered in favor of the plaintiff. The opinion states the facts.

H. R. COMLY, for appellant.

1. The plaintiff's complaint herein is insufficient, because it does not show any such title in plaintiff, by grant or patent from the United States, as carries with it "livery of seizin," nor is there any allegation of actual prior possession which, without such grant or patent, would sustain his action of ejectment.

2. The words in section 3 of the charter of the N. P. R. R. Co. which, unexplained, would import a grant *in præsenti*, are specially restricted by the provisions of the following sections, to wit: Sections 4, 5, 6, 8 and 9, and perhaps section 20. See 13 U. S. Statutes at Large, pp. 369 *et seq.*

*a.* Section 4 prescribes when the grant shall take effect and how it shall be completed, to wit: "When twenty-five consecutive miles of the road shall be completed, and after the report of commissioners, etc., patents shall be issued to the company conveying the additional sections," etc.

*b.* Section 5 imposes other conditions, prescribing how the road shall be constructed, . . . the necessary culverts, bridges, . . . gauge, etc.

*c.* Section 6 specially exempts certain lands from the provisions of the act, and virtually provides that the

lands reserved shall not be disposed of to any other parties than the N. P. R. R. Co. (under the provisions of the act).

*d.* Section 8 makes a further condition, that the said company receives said grants, rights and privileges on the condition that it shall commence work on the road within two years, etc.

*e.* Section 9 specifically qualifies and interprets the words used in the previous section 3 (which alone would import an absolute grant or grant *in præsenti)* by the following words: " That the United States make the several 'conditioned grants herein,' etc., upon the 'further condition,' " etc.   It therefore appears that this grant is not an absolute grant conveying all of the interest of the United States in the said odd sections at the passage of the act, but is in reality a grant of an incorporeal right in said lands, accompanied by certain conditions, upon the performance of which conditions the act provides how and when the title shall vest in the company, to wit: " The lands shall be conveyed by patents when each twenty-five miles of the road shall be completed," and not before.

3. By the provisions of the charter of the road accepted by the railroad company, a contract exists between the United States and the railroad company by which the United States places itself in the position of a trustee for the railroad company (when the company shall designate its route), and agrees that upon so doing the government will reserve from sale, etc., the odd sections, to be conveyed to the company upon the performance of certain acts, and such trust may be created in this manner and is known as an implied or resulting trust (see Bouvier's Institutes, vol. 1, sec. 1901); the legal title or estate remaining in the United States, and the company having but an equitable estate, upon which no action of ejectment can be maintained by the company. See 32 Cal. 458, and cases there cited.

4. Whenever privileges are granted to a corporation

and the grant comes under revision in the courts, such privileges are to be strictly construed against the corporation and in favor of the public, and nothing passes but what is granted in clear and explicit terms. *Rice* v. *R. R. Co.* 1 Black (U. S.), 380, and cases there cited. The word "grant," therefore, as used in the act with the conditions therein named, must be construed strictly against the company, and must receive only its restricted signification; and thus considered, only an incorporeal right in the thing granted is conveyed, to wit, the right to receive a patent for the odd sections upon performing certain conditions. Bouvier's Institutes, vol. 1, sec. 2050 *et seq.* "The word 'grant' is not a technical word like the word *enfeoff*, and although, if used broadly, without limitation or restriction, it would carry an estate or interest in the thing granted, still it may be used in a more restricted sense, and be so limited that the grantee will take but a mere naked trust or power to dispose of the thing granted. Intention must be deduced from the whole statute and every part of it." 1 Black, 378. In this case a trust would result in favor of the company, to be determined upon its completing the road opposite to the odd sections claimed; the United States acting as trustee and reserving the legal title until the performance of such conditions by the road.

5. The general words, "That there be and is hereby granted," in the third section of the charter, are restrained by the particular words designating when and how these words may become effective, in the fourth section, and especially the words in the ninth section, where congress, in defining the same, has designated the grants as "conditioned grants," and these latter control, being in subsequent clauses or sections of the statute to that section containing the general words of present grant. Sedgwick on Stat. and Const. Law, p. 60.

6. "The court, if possible, must give the statute such a construction as will enable it to have effect; that is, it

must be construed in accordance with legislative intent."
Cooley's Const. Lim. 223.   Congress intended that a Pacific railroad should be built, and did not intend to convey
one-half of a strip of country eighty miles wide and two
thousand miles or thereabouts in length to a company
without compensation or security, which latter would be
the effect should the courts hold that an absolute grant
was made in section 3 of the charter.  If the title passed
at once without regard to conditions, then a purchaser
from the N. P. R. R. Co., or the corporation itself, might
never have built a mile of road and still would acquire
this vast tract of land without consideration.   Such a
position, we respectfully submit, is wholly untenable.  As
to this intention of congress all the sections named are
referred to, but especially sec. 20, p. 372, of vol. 13, where
the intention is plainly stated thus: "That the better to
accomplish the object of this act, namely, to promote the
public interest and welfare by the construction of said
road," etc.,   .   .   .   "congress may at any time, having
due regard for the rights of said N. P. R. R. Co., add to,
alter, amend or repeal this act."

Appellant concludes by quoting the following from the
case of *The United States* v. *Wm. Childers*, in the United
States district court, district of Oregon, the opinion by
Deady, justice, to which opinion in full, attention is specially called as covering the question raised in this case:
"And although there is no express declaration in the
North Pacific Act, that the title shall not vest in the corporation until the completion of the road or portions of
it, yet the legal effect of the clauses therein, which provide for conveying and confirming the title to the company by patent *only* upon the completion of the road or
portions of it, is the same."

My conclusion, then, is, that the legal title to the unearned portions of this grant, the odd numbered sections
opposite to which the road has not been completed and
accepted, is still in the United States.

SANDERS & CULLEN, for respondent.

1. Whoso has the title to real estate may always recover its possession, except, possibly, when (*a*) another has the equitable estate as against the bare legal title; or (*b*) it be incumbered with a trust.

2. Even in the last two instances the holder of the legal title may recover possession as against all the world, except (*a*) the owner of the equitable estate in one case, and the *cestui que trust* in the other.

3. Majors has not the equitable estate in these lands, nor is he any *cestui que trust* of them, nor are the lands held in trust, nor is there any equitable estate in these lands out in any other person whatever.

4. One single question remains. In whom is this title? If in the plaintiff, this judgment should be affirmed.

5. By section 3 of the act incorporating this plaintiff it is provided "That there be and is hereby granted" this land.

6. This phrase has been five times interpreted by the supreme court of the United States (*Rice* v. *R. R.* 1 Black, 358; *Schulenberg* v. *Harriman*, 21 Wall. 44; *L. L. & G.* v. *U. S.* 92 U. S. 733; *M. K. & T.* v. *K. P. R.* 97 U. S. 491; *Baldwin* v. *R. R.* 103 U. S. 426) to mean words of present grant, taking effect on approval of the act if lands were sufficiently described, and if not, then so soon as they were ascertained so that the act could attach to them.

7. The word "title," used in these decisions, is a technical word with a definite, specific meaning, and they settle when the title vests in a beneficiary holding by such a grant.

8. There is no discord in these decisions on this one point.

9. Analyzing the statutes involved in these decisions, we shall find that all controversy has turned on the proposition whether the conceded effect of the phrase, "That there be and is hereby granted," is or is not in the par-

ticular instance modified by words subsequently inserted in the statute.

10. The subsequently used and modifying words in the statute under discussion in 1 Black, 358, were: "No title shall vest in the said territory of Minnesota at a, . . . until," etc.; and the court held that these words did restrain the granting clause of the act.

11. In 21 Wall. 44, the qualifying words in the subsequent part of the statute were, if there was a breach of the condition, that "the lands unsold should revert to the United States;" but the court held these words in no way impaired the grant, either before or after a breach of the condition.

12. There were no qualifying words in the statute in 103 U. S. p. 426, and as there are in plaintiffs' act of incorporation no such qualifying words as are discussed in 1 Black or 21 Wallace, those cases are of no use, except as showing the legal effect of the phrase "that there be and is hereby granted."

13. The only phrase which can be claimed as qualifying the words of present grant in plaintiffs' act of incorporation are those providing for patent on completion of sections of road.

14. We are so habituated to seeing government lands pass by patent rather than by law, that, when patents are provided to be issued, by force of habit we thoughtlessly attribute to them the function of conveying the title. But this conclusion is by force of habit rather than by logic or authority.

15. Let us see if the supreme court of the United States, having before them a statute with words of present grant followed by provisions that, on completion of certain sections of road, a patent should issue, have determined whether or not such provisions as to patent subsequently issuing on acceptance by president of completed sections of road do qualify, impair or delay passing of title. If

such a case can be found, it will be precisely in point, and are exact authorities.

16. In *M., K. & T. R'y Co.* v. *K. P. R'y Co.* 97 U. S. 491–501, the court had under consideration rights based on a statute in all particulars involved in this contention substantially like the act of July 2, 1864. There was thereby granted to companies lands to aid in the construction of three or four roads, to which grants there were attached, as there are here, conditions subsequent. It was provided that when forty miles were completed, commissioners appointed by the president were to examine the sections, and, if approved by them, they were to report to the president, when patents were to be issued " conveying the right and title " to said lands to the company so constructing said road. While the verbiage is different, certainly in every particular useful or instructive in this discussion, the law is like unto that of the Northern Pacific Railroad Company's grant. What the court say in that case is wholly inconsistent with the theory of the appellant's counsel in this case, and being from a court of commanding authority, it is conclusive of this case.

17. In 10 Cal. p. 589, is *Ferris* v. *Coover*, a case equally useful if not so authoritative in this discussion.

18. The right to occupy the public domain is granted to citizens of the United States, and those who have declared their intention to become such, and they may, by processes given by law, ripen their possession into a title. While thus in possession they maintain trespass against intruders and vindicate an inchoate title as being efficient to protect their possession as against every one but the United States. The United States, however, while they thus occupy by their executive department, assume to protect the land occupied from timber depredations and some other forms of waste, even as against the occupier, until title is perfected in him, in which doubtless they

would be aided by the judicial department of the government if invoked; and this shows that partial, incomplete titles are sufficient to base an ejectment on as against an intruder who is a man thereon without claim of right.

19. No lawyer in the fierce political contention going on over this grant has ever suggested but that some action, which was equivalent to re-entry for breach of condition, was necessary if the government would restore these lands to the public domain. But if the act of 1864 vested no interest in these lands in the company, then these lawyers are all wrong.

20. In 1883, on completion of road, if the company should go to the government and say, "I have built the road and you agreed on certain conditions to give me land if I would build it, and I want the land," it would be necessary, if the grant was *in futuro*, to set forth the conditions, and aver that they had been complied with. It would be a good defense to say: you did not complete the road July 4, 1879. If that was the situation, then the interior department has long been giving to this company patents without authority of law. But this is not the case. The company has title to this land. Congress, each member, all parties, rival railroads, recognize this. Congress is even now deliberating whether it has any power to take that interest away. Upon that question the judiciary committee of the house, able as to lawyers, are divided; a majority saying that an act passed taking away, in form, those lands from this company, would fall within the inhibition of the constitution forbidding impairment of the obligation of contracts, and would therefore be void.

21. We also refer the court to the opinion of Judge Black, a lawyer of standing, who, advising a former committee of the house of representatives in congress of the *status* of this grant, clearly places a complete title in the company. We cannot deny the ingenuity or plausibility of the counsel for appellant. But the plausi-

bility of his whole argument results from his having blotted out of a statute of the United States, two words. To this it may be replied that two words are not very many, or it may be said the words are small. Neither statement can be denied; but those two words are in the statute; they were put there by a congress which knew their meaning, and, on just such occasions as this, meant they should stay. Those two words are the last two words on the first line of sec. 3, p. 367, vol. 13, U. S. Stats. at Large.

22. We concede that the plaintiff is only entitled to patents where road is completed, examined and approved in sections, but that is not the question. The question is, what function do the patents fulfil in the relations of the company to the United States? Appellant's counsel insists that those patents are efficient to, and do, convey to the plaintiff a title. This we deny. They particularize and select singly the sections to which the company has a title already; they keep the records of the general land office straight as to what is designated; they confirm an already granted right; they operate as a further assurance where no further assurance, indeed, is needed. The word "hereby" is an exact equivalent to the words "by these presents." So the statute is a conveyance as well as a law.

23. Counsel for appellant finds much comfort and rests with confidence on the word "conditioned" in section 9. Now, no one ever denied that this was a conditional grant, but why calling a grant on condition a "conditioned grant" detracts from its force as a grant is not seen. That is merely a name given by congress to a grant made in prior sections of the statute, and a fit enough name it is. It seems to us the poet's statement as to how a rose by another name would smell, is the only authority we need quote in answer to this point.

24. As to appellant's argument that the company might own all this or sell all this land and never build

the road, that is true. It excites fears even now; for so far as we know, sections 8 and 9 are not on record with the various recorders of counties through which this road is to run, and this fear brings us to the exact quality of title that is in the company; and we claim that a complete title now vests in the company. So long as the title remains in the company it is perfect, exact, full; but it would be liable, were it not for section 9, to be terminated by a breach of the conditions and an insistence on the breach and proper action by the government. But while the title remains in the company it is complete in the company. Its infirmity does not detract from the strength of title while it remains *in statu quo*, only that possibly a time may come when it will pass just as complete to the United States as it now is in the plaintiff.

25. Nor does section 20 militate to destroy section 3 of the act and its efficiency. It is not claimed that congress has altered, amended, added to or repealed the act in any particular touching the efficient granting clause in section 3, and until this is done it is not seen how the presence of that section can explain, limit or detract from the fulness of the grant until action is taken thereunder.

26. Congress is not now talking about rescinding a contract to convey; it is considering a proceeding equivalent to a re-entry upon lands already conveyed for the breach of a condition in the statute conveying the lands. We refer the court to the reports of the committee on judiciary.

27. All this discussion is upon the hypothesis that it is a controversy between the railroad company and the United States, but it appears from the complaint that the defendant is an intruder.

28. It seems clear to us there was no error in the judgment below, and that the case should be affirmed.

GALBRAITH, J. This is an appeal from an order overruling a demurrer to the complaint. The demurrer avers,

as the only ground therefor, that the complaint does not state facts sufficient to constitute a cause of action. The complaint alleges, in substance, that by section 3 of an act of congress entitled "An act granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget Sound, on the Pacific coast, by the northern route," approved July 2, 1864, there was granted to the respondent every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile on each side of said railroad, as said company might adopt, through the territories of the United States, wherever on the line thereof the United States had full title at the time the line of the road was definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office; that by section 6 of the act aforesaid, it was provided that after the general route of the road should be fixed, the president of the United States should cause the lands to be surveyed for forty miles in width on both sides of the line of said road as fast as might be required by its construction, and that the odd-numbered sections of land granted by section 3 of said act to the respondent should not be liable to sale, entry or pre-emption, before or after they were so surveyed, except by the said North Pacific Railroad Company; that the general route of said railroad adjacent and opposite to section thirteen (13), township ten (10) north, of range four (4) (the land in question), was fixed by the respondent the 21st day of February, 1871, within less than forty miles from said section, by means whereof said section was withdrawn from sale, entry or pre-emption, except by the respondent; and thereafter, to wit, on the 1st day of October, 1881, the line of said road at and opposite to said section was definitely adopted and fixed, and a plat thereof filed in the office of the commissioner of the general land office, at which time the said section was free from other sales, reservations, appropriations, pre-emptions, dispositions, claims or rights than that con-

tained in section 3 of the act aforesaid,‛ granting the same to the respondent; that said grant then and there took effect and attached thereto, and that said company did then proceed and is now proceeding to construct its road upon said line of definite location, opposite and adjacent to and by the said section thirteen (13), which is within the limits of said grant; that said section thirteen (13), on the 2d day of July, 1864, was public land of the United States, to which they then and there had full title, and except for the grant to the respondent would yet have full title thereto, and so in the manner aforesaid the respondent says it has full title to and is the owner of said section thirteen (13), and on the 1st day of October, 1881, was, and ever since has been, entitled to the possession and occupancy and enjoyment thereof. The complaint also alleges entry and ouster by the appellant on the 30th day of October, 1881, and demands possession of the premises in question.

The argument of the appellant is, in substance, that the complaint "does not show any such title in the respondent by a grant or patent from the United States as carries with it livery of seizin, nor is there any allegation of actual prior possession which, without such grant or patent, would sustain its action of ejectment;" that the words of present grant, in the third section of the act, are specially restrained by the provisions of other portions of the act, which prescribe certain conditions, and especially by those of section 4, which, it is claimed, determines when the grant shall take effect, viz.: "When twenty-five consecutive miles of the road shall be completed, and after the report of commissioners, etc., patents shall be issued to the company *conveying* the additional sections," etc.; that until this time, viz., when patents shall have issued in accordance with the act, the right of the respondent in the lands by virtue thereof is simply the "grant of an incorporeal right in said lands, accompanied by certain conditions, upon the performance

of which conditions the act provides when and how the title shall vest in the company, to wit, the lands shall be *conveyed by patent*, when each twenty-five miles of the road shall be completed, and not before; that by virtue of the act, the United States becomes a trustee for the company, and agrees that when it shall have designated its route, "the government will reserve from sale, etc., the odd sections to be conveyed to the company upon the performance of certain acts;" that the legal title is in the United States until the issue of the patent, before which the company has only an equitable estate, and cannot maintain an action of ejectment. The complaint does not allege any patent to the respondent.

The questions, therefore, for our consideration are, What is the character of the title in the respondent by virtue of the act before the issue of the patent? And when does it have such a title as that it can maintain thereon an action of ejectment?

In order to solve these questions, we must arrive at the true interpretation of the act of congress making the alleged grant. The proper rule of interpreting this act we believe to be that cited by the appellant, viz.: "The court, if possible, must give the statute such a construction as will enable it to have effect; that is, it must be construed in accordance with the legislative intent." Cooley's Const. Lim. 223. This is substantially the language of the supreme court of the United States in *Leavenworth, etc. R. R. Co.* v. *The United States*, where Davis, J., delivering the opinion of the court, says, referring to the act of congress granting lands to the railroad company: "This grant, like that to Iowa, was made for the purpose of aiding a work of internal improvement, and does not extend beyond the intent it expresses. It should be neither enlarged by ingenious reasoning, nor diminished by strained construction. The interpretation must be reasonable and such as will give effect to the intention of congress. This is to be ascertained from the

terms employed, the situation of the parties, and the nature of the grant. If these terms are plain and unambiguous, there can be no difficulty in interpreting them; but if they admit of different meanings, one of extension and the other of limitation, they must be accepted in a sense favorable to the grantor." The latter portion of this language, and similar language in other decisions, must be considered as referring to terms so ambiguous in their character that a resort must be had to a rule of construction resolving the doubt in favor of one party to the contract rather than to the other; for we are satisfied that it is a rule absolutely binding upon all courts, that where the legislative will and intent is discovered in a statute, they must give force and effect to that will and intent when it does not contravene the fundamental law. It is the rule of common law in relation to grants, that where the language was so ambiguous as to call for the interposition of a rule of interpretation, the doubt was required to be resolved against the grantor. It was expressed thus: "That the deed be taken most strongly against him that is the agent or contractor, and in favor of the other party." 2 Bla. Com. 380. In the language of the authorities generally, private grants are strictly construed against the grantors, and public grants against the grantees. But it is only when courts are in doubt as to the meaning of the instrument that resort will be had in either case to the above rule of construction.

Another rule of construction of legislative acts is, that it must be made upon the entire act, and not upon disputed parts of it. Every part of the act should be made to take effect, if possible, and all the words be made to operate in one way or the other. Can, therefore, the intention of congress be discovered from the act itself, without resort to the rule which obtains, where there is ambiguous or doubtful language in an act of the legislature? and what, taking into consideration all the language of the act in question, was such intention in

relation to the time when the grant should take effect? The act will be presumed to have been passed by congress with the knowledge of its previous enactments in relation to grants of lands, and the repeated determinations of the supreme court of the United States as to their construction. That court has repeatedly held, in construing grants of land made by congress, that "a grant" of lands "may be made by law as well as by a patent issued pursuant to a law," "and such grant vests an indefeasible and irrevocable title." *Fletcher* v. *Peck*, 6 Cranch, 87; *Strother* v. *Lucas*, 12 Pet. 454; 9 Cranch, 43; *Wilkinson* v. *Leland*, 2 Pet. 498; 3 Washburn on Real Prop. (4th ed.) 193, 194.

"It [a confirmation of title by act of congress] was a higher evidence of title than a patent, as it was the direct grant of the fee which had been in the United States, by the government itself, whereas the patent was only the act of its ministerial officers." *Grignon's Lessee* v. *Astor*, 2 How. 319. "The plaintiff's title [a confirmation by congress] is *prima facie* a good legal title, and will support ejectment on the act of 1836, standing alone, if the land can be identified as confirmed without resort to the patent." *Chouteau* v. *Eckhart*, id. 344. In *Green* v. *Leiter*, 8 Cranch, 229, Story, J., says: "We are entirely satisfied that a conveyance of wild or vacant lands gives a constructive seizin thereof in deed to the grantee, and attaches to him all the legal remedies incident to the state. *A fortiori*, the principle applies to a patent, since, at the common law, it imports a livery in law." For a still stronger reason would this principle apply in the case of an act granting such lands, for, as we have just seen, the supreme court of the United States has held that such an act is higher evidence of title than a patent.

The decisions of the supreme courts of several of the states are to the same effect. "A grant of lands by the government is tantamount to a conveyance with livery of seizin." 3 Washburn on Real Prop. (4th ed.) 191, and

cases there cited. "He who takes title to lands from the federal government draws the actual legal possession to it." *Robinson* v. *Lake*, 14 Iowa, 421.

With this construction of public grants as the uniform rule, congress passed the act in question. Its preamble entitled it as follows: "An act granting land to aid in the construction of a railroad and telegraph line from Lake Superior to Puget Sound, on the Pacific coast, by the northern route."

Those portions of the act which bear upon the question before us are as follows: Section 3 of the act provides "that there be and hereby is granted to the Northern Pacific Railroad Company, its successors and assignees, for the purpose of aiding in the construction of said rail-road, . . . every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile on each side of said railroad line as said company may adopt through the territories of the United States, . . . and whenever on the line thereof the United States have full title, not reserved, sold, granted or otherwise appropriated, and free from pre-emption or other claims or rights at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office."

Section 4 provides "that whenever said Northern Pacific Railroad Company shall have twenty-five consecutive miles of any portion of said railroad and telegraph line ready for the service contemplated, the president of the United States shall appoint three commissioners to examine the same, and if it shall appear that twenty-five consecutive miles of said road and telegraph line have been completed in a good, substantial and workmanlike manner, as in all other respects required by this act, the commissioners shall so report to the president of the United States, and patents of lands as aforesaid shall be issued to said company, *confirming* to said company the

*right* and *title* to said lands, situate opposite to and coterminous with said completed section of said road; and from time to time, whenever twenty-five additional consecutive miles shall have been constructed, completed, and in readiness as aforesaid, and verified by said commissioners to the president of the United States, then patents shall be issued to said company *conveying* the additional sections of land as aforesaid, and so on, as fast as every twenty-five miles of said road is completed and operated."

Section 6 provides "that the president of the United States shall cause the lands to be surveyed for forty miles in width on both sides of the entire line of said road, after the general route shall be fixed, and as fast as may be required by the construction of said railroad; and the odd sections of land hereby granted shall not be liable to sale or entry or pre-emption, before or after they are surveyed, except by said company, as provided in this act; but the provisions of the act of September, 1841, granting pre-emption rights, and the acts amendatory thereof, and of the act entitled 'An act to secure homesteads to actual settlers on the public domain,' approved May 28, 1862, shall be and the same are hereby extended to all other lands on the line of said road when surveyed, excepting those hereby granted to said company. And the reserved alternate sections shall not be sold by the government at a price less than two dollars and fifty cents per acre."

It will be observed that the preamble, which may be resorted to, to aid in the construction of an act of the legislature (1 Bla. Com. 60), recites that it is "an act granting lands;" that is, the act itself grants. It does not recite that it is an act providing for a grant or conveyance or sale of lands, which in all probability would have been the language used had it been the intention of congress that the patent should operate as a conveyance, but that the act itself is the grant. This language is

also indicative of an intention that the grant is a present grant. The word used is "granting," being the present participle; that is, granting now. Again, the object of the grant, as stated in the preamble, was to aid in the construction of the road. The plain and unconstrained meaning of this language would seem to be that these lands were to be available to the road, not after it had been completed, or after any portion of it had been completed, but during the construction thereof. If we are right in this view of the above language, it will also be an indication of the will and intent of congress in the enactment of the law. The language, therefore, of the preamble, so far as it is indicative of and aids us to arrive at the intention of congress in the passage of the act, recites that the act itself is the grant.

The first language used in the act itself, relating to the grant of lands, is contained in section 3, and is as follows: "That there be, and is hereby, granted to the Northern Pacific Railroad Company, its successors and assigns, for the purpose of aiding in the construction of said railroad," etc. The above phrase, "there be, and hereby is, granted," has been several times before the supreme court of the United States, and has received a fixed and definite construction. In construing an act of congress of 1820, granting lands to the state of Missouri, which contained the following language, "that four entire sections of land be, and the same are hereby, granted to the said state, for the purpose of fixing the seat of government thereon; which said sections shall, under the direction of the legislature of said state, be located as near as may be in one body at any time, in such townships and ranges as the legislature aforesaid may select on any of the public lands of the United States, provided that such location shall be made prior to the public sale of the lands of the United States surrounding such location."

Mr. Justice Catron delivering the opinion of the supreme court of the United States, and referring to the

opinion of Chief Justice Marshall in *Rutherford* v. *Green's Heirs*, 2 Wheat. 196, says: "The land was granted by the act. It was a present grant, wanting identity to make it perfect, and the legislature was vested with full power to select and locate the land; and we need only here say, what was substantially said by this court in *Rutherford* v. *Green's Heirs*, that the act of 1820 vested a title in the state of Missouri of four sections, and that the selections made by the state legislature, pursuant to the act of congress, and the notice given of such location to the surveyor-general and the register of the local district where the land lay, gave precision to the title, and attached it to the land selected." *Lessieur* v. *Price*, 12 How. 59. The same court, in *Schulenberg* v. *Harriman*, 21 Wall. 44, Field, J., delivering the opinion of the court, says: "That the act of congress of June 3, 1856, passed a present interest in the lands designated there can be no doubt. The language used imports a present grant, and admits of no other meaning. The language of the first section is, "*That there be, and hereby is, granted* to the state of Wisconsin the lands" specified. The third section declares "that the said lands *hereby granted* to said state shall be subject to the disposal of the legislature thereof;" and the fourth section provides in what manner sales shall be made, and enacts that if the road be not completed within ten years, "no further sales shall be made, and the lands unsold shall *revert* to the United States." The power of disposal and the provision for the lands reverting both imply what the first section in terms declares, that a grant is made — that is, that the title is transferred to the state. It is true that the route of the railroad, for the construction of which the grant was made, was to be designated, and until such designation, the title did not attach to any specific tracts of land. When the route was fixed, their location became certain, and the title, which was previously imperfect, acquired precision and became attached to the land.

In the case of *Rutherford* v. *Green's Heirs*, 2 Wheat. 196, a similar construction was given by the court to an act of North Carolina passed in 1782, which provided that twenty-five thousand acres of land should be allotted and given to General Green and his heirs, within the limits of a tract reserved for the army, to be laid off by commissioners appointed for that purpose. The commissioners, pursuant to the directions of the act, allotted the twenty-five thousand acres, and caused the quantity to be surveyed, and the survey to be returned to the proper office; and the questions raised in the case related to the validity of the title of General Green, and the date at which it commenced. The court held "that the general gift of twenty-five thousand acres lying in the territory reserved became by the survey a particular gift of the quantity contained in the survey, and concluded an extensive examination of the title by stating that it was the clear and unanimous opinion of the court that the act of 1782 vested a title in General Green to the twenty-five thousand acres, to be laid off within the bounds designated, and that the survey made in pursuance of the act gave precision to that title, and attached it to the land surveyed."

In the case of *L. L. & G. R. R. Co.* v. *U. S.* 92 U. S. 733, Davis, J., delivering the opinion of the court, says, referring to the act under consideration: "It creates an immediate interest, and does not indicate a purpose to grant *in futuro*. 'There be, and is hereby, granted,' are words of absolute donation, and import a grant *in præsenti*. This court has held that they can have no other meaning, and the land department, on this interpretation of them, has administered every similar grant. *Railroad Co.* v. *Smith*, 9 Wall. 95; *Schulenberg* v. *Harriman*, 21 id. 60; 1 Lester, 513; 8 Op. Att. Gen. 257; 11 id. 47. They vest a present title in the state of Kansas, though a survey of the land and a location of the road are necessary to give precision to it and attach it to any

particular tract. The grant then becomes certain, and by relation has the same effect upon the selected parcels as if it specifically described them. In other words, the grant was afloat until the line of the road should be definitely fixed."

In the case of *M. K. & T. R. R. Co.* v. *K. P. R. R. Co.* 97 U. S. 491, Field, J., speaking for the supreme court of the United States, says: "Briefly stated, the case of the plaintiff is this: In 1862 congress granted to it certain lands, consisting of odd sections along a railroad to be afterwards constructed. In 1864 congress enlarged the grant, and by subsequent legislation authorized the route of the road to be designated at any time before December, 1866. When designated, lands within a limit sufficiently extended to embrace the granted sections were to be reserved from sale; and when certain portions of the road were from time to time completed, and were accepted by the president as a first-class road, patents for the sections were to be issued to the company. The plaintiff designated the route of its road in July, 1866, and the lands in controversy were, on the 26th of that month, reserved from sale. By the 14th of December following it had completed twenty miles of its road, and by the 16th of January, 1867, five miles in addition. Commissioners were appointed by the president to examine and report as to the completion and equipment of the road, and upon their favorable report the section of twenty-five miles was accepted by him, and a patent for the lands was ordered to be issued. The plaintiff therefore claims that it acquired a title to the lands and has a right to the evidence of it; and this claim is well founded, unless there be something impairing its validity in the legislation and proceedings under which the defendant asserts title to the land.

"As between the United States and the plaintiffs, the right of the latter to a patent became perfect on the approval by the president of the report of the commission-

ers.   The act of July 1, 1862, passed to the company a
present interest in the lands to be designated within the
limits there specified.   Its language is, 'that there be, and
is hereby, granted' to it the odd sections; which words
import a grant *in præsenti,* and not one *in futuro,* or the
promise of a grant.   Similar terms in other acts of con-
gress granting lands have uniformly received this inter-
pretation, unless accompanied with clauses restraining
their operation.   They were so interpreted in *Schulenberg*
v. *Harriman,* after full consideration of previous adjudi-
cations on their import, and the ruling there was fol-
lowed in *Leavenworth, Lawrence & Galveston Railroad
Co.* v. *United States,* 92 U. S. 733.   It is true that the
route of the road in this case, as in those cases to aid in
the construction of which the act was passed, was to be
afterwards designated; and until designated, the title
could not attach to any specific tracts.   The grant was of
sections to be afterwards located, and their location de-
pended upon the route to be established.   When that was
settled the location became certain, and the title that was
previously imperfect acquired precision and attached to
the lands.

"It is always to be borne in mind, in construing a
congressional grant, that the act by which it is made is a
law as well as a conveyance, and that such effect must
be given to it as will carry out the intent of congress.
That intent should not be defeated by applying to the
grant the rules of the common law, which are properly
applicable only to transfers between private parties.   To
the validity of such transfers it may be admitted that
there must exist a present power of identification of the
land, and that when no such power exists instruments
with words of present grant are operative, if at all, only
as contracts to convey.   But the rules of the common
law must yield in this, as well as in all other cases, to the
legislative will.

"As to the intent of congress in the grant to the plaint-

iff, there can be no reasonable doubt. It was to aid in the construction of the road by a gift of lands along its route, without reservation of rights except such as were specifically mentioned, the location of the route being left within certain general limits to the action of the plaintiff. When the location was made, and the sections granted ascertained, the title of the plaintiff took effect by relation as of the date of the act, except as to the reservations mentioned, the act having the same operation upon the sections as if they had been specifically described therein."

In the case of *The St. Joseph & Denver City Railroad Co.* v. *Baldwin*, 103 U. S. 427, the supreme court also says: "The language of the act here, and of nearly all the congressional acts granting lands, is in terms of a grant *in præsenti.* The act is a present grant, except so far as its immediate operation is affected by the limitation. 'There is hereby granted' are the words used, and they import an immediate transfer of interest, so that when the route is definitely fixed, the title attaches from the date of the act, to the sections, except such as are taken from its operation by the clauses mentioned." The limitation in this case was that in case at the time the line of the road was fixed the United States had sold any of the lands, or that the right of homestead or preemption had attached thereto, or that the same had been reserved by the United States, then the secretary of the interior should select other lands in lieu thereof for the state. So far, therefore, as the third section of the act under consideration standing alone is concerned, viz., "that there be, and hereby is, granted," the above decisions have determined its construction to be that of words of present grant; that they create "an immediate interest, and do not indicate a purpose to grant *in futuro.*" These decisions also determine for us (where the act itself does not indicate the particular lands granted, but leaves their location to be specified in the future) when

such a grant shall attach to the particular tracts, and become fixed and certain, until which it is afloat, which in this case would be when the line of the road is definitely fixed, and the lands granted thereto ascertained.   This is necessary to be done to give precision to the grant and attach it to the particular tracts of land.

When such line is definitely fixed, and the sections of land designated by the survey, the grant then becomes certain, and, by relation, has the same effect upon the lands thus designated as if they were specifically described therein.   Therefore we must conclude, now having in view simply sections 3 and 6 of the act in question, that the grant takes effect as of date of the act, and becomes attached to the specific tracts when definitely ascertained by the location of the route of the road and the survey of the lands.

The appellant, however, insists that "the words in section 3 of the charter of the Northern Pacific Railroad, which, unexplained, would import a grant *in præsenti,* are specifically restricted by the provisions of the following sections, to wit: Sections 4, 5, 6, 8 and 9, and perhaps section 20." How far the provisions of section 4 restrict the words of present grant we will consider hereafter. Section 5 provides principally for the proper construction of the road and telegraph line, and prescribes briefly the manner of such construction.   Section 6 specifically exempts certain lands from the provisions of the act, and virtually provides that the lands reserved shall not be disposed of to any other parties than the Northern Pacific Railroad.   Section 8 provides, in substance, that the company accepts the grants, rights and privileges conferred by the act, and that the same are given upon condition that it shall commence the work in two years from the approval of the act, and complete not less than fifty miles per year after the second year, and finish the road completely by the 4th of July, 1876.   Section 9 refers to the grants conferred by the act as conditioned grants, and

provides that they are made by the United States and accepted by the company, upon the further condition that if the company make any breach of the conditions thereof, and allow it to continue for more than a year, congress at any time thereafter may do anything necessary to insure a speedy completion of the road. So far as the provisions relate to the language making the grant contained in the third section, they do not affect the creation or vesting of the estate in the lands, but simply the nature and character of the estate.

So far as they impose conditions upon the grantee, these are what are termed conditions subsequent. They do not relate to the creation of the estate, but render it liable to be defeated for default on a breach in performance of such conditions. Upon default or breach of such conditions, congress might declare a forfeiture. "It is settled law that no one can take advantage of the non-performance of a condition subsequent, annexed to an estate in fee, but the grantor or his heirs or the successors of the grantor, if the grant proceed from an artificial person; and if they do not see fit to assert their rights to enforce a forfeiture on that ground, the title remains unimpaired in the grantee." *Schulenberg* v. *Harriman,* 21 Wall. 44.

"If the grant be a public one, it must be asserted by judicial proceedings authorized by law, the equivalent of office found at common law, finding the fact of forfeiture, and adjudging the restoration of the estate on that ground, or there must be some legislative assertion of ownership of the property for breach of the condition, such as an act directing the possession or appropriation of the property, or that it be offered for sale or settlement. At common law the sovereign could not make an entry in person, and therefore an office found was necessary to determine the estate; but, as said by this court in a late case, 'the mode of asserting or reserving the forfeited grant is subject to the legislative authority of the

government. It may be after judicial investigation or by taking possession directly, under authority of the government, without these preliminary proceedings.' In the present case, no action has been taken, either by legislative or judicial proceedings, to enforce a forfeiture of the estate granted by the acts of 1856 and 1864. The title remains, therefore, in the state, as completely as when the title by location of the route of the railroad acquired precision and attached to the adjoining alternate sections." *Schulenberg* v. *Harriman,* 21 Wall. 44.

It may be, perhaps, unnecessary, in view of the situation of the case at bar, to say that no such attempt has been made to forfeit the title claimed by the respondent to be vested in it by virtue of the act of congress under consideration. The fact that section 9 refers to the grant of lands as "conditioned grant" does not at all, as claimed by the appellant, change the character of such conditions from conditions subsequent to conditions precedent, or, in other words, from that kind of conditions which operate upon estates already created, and which may defeat or cause a forfeiture of such an estate, to that which affects the vesting or creating of an estate.

So far, therefore, as sections 5, 6, 8, 9 and 20 of the act are concerned, they do not affect the vesting of the estate which is claimed by respondent to be created and vested by sections 3 and 6, and which must be so created and vested, unless the language of present grant, contained in section 3, is restrained and limited by the provisions of section 4.

This brings us to the consideration of how the language of section 4 affects the words of present grant contained in section 3. It is claimed by the appellant that "section 4 prescribes when the grant shall take effect, and how it shall be completed," to wit: "When twenty-five consecutive miles of the road shall be completed, and after the report of the commissioners, etc., patents shall

be issued to the company, conveying the additional sections," etc.

It will be observed that this section provides, in the first portion thereof, "that whenever said Northern Pacific Railroad Company shall have twenty-five consecutive miles of any portion of said railroad," etc., completed, and the commissioners have reported thereon as required by the act, their "patents of lands, as aforesaid, shall be issued to said company, *confirming* to said company the *right* and *title* to said lands, situated opposite to and coterminous with said completed section of said road." And again, in the latter portion thereof, "and from time to time, whenever twenty-five additional consecutive miles shall have been constructed and completed," and reported upon by the commissioners, "then patents shall be issued to said company, *conveying* the additional sections of land as aforesaid, and so on, as fast as every twenty-five miles of said road is completed as aforesaid."

A confirmation is a species of common law conveyance. It is defined as "a deed, whereby a conditional or voidable estate is made absolute and unavoidable by the confirmer, so far as he is able, or whereby a particular estate is increased," referring to Co. Lit. 295 b, and 2 Bla. Com. 325.

We have seen that the act, not taking into consideration section 4, constitutes a conditional grant. The effect of the patent referred to in the first part of section 4 is therefore simply to discharge the condition attached to the grant, so far as relates to the odd sections situate opposite to and coterminous with the completed twenty-five consecutive miles of "any portion" of the road, and make the title thereto absolute in the grantee. If the same language had been used in the latter portion of this section, instead of the term "conveying," there could be no shadow of doubt as to the object of the entire sec-

tion. But we think that the difference in the language of the two portions can be easily reconciled. We cannot see, taking into consideration the entire act and its object, why any distinction should be made between the twenty-five consecutive miles of "any portion of" the road and the other portions or sections thereof of twenty-five miles each. So far as relates to the grant of lands, we do not think that congress intended to make any such distinction. Conveyance, as we have seen, is the generic term, of which confirmation is the species. Its operative words include those of a feoffment, which is also a species of a conveyance. We think, therefore, that when the word "conveying" was used in the latter portion of section 4, it was employed as synonymous with the language used in the first portion thereof, viz., "confirming the *right* and *title*." By this construction section 4 recognizes the estate in the grantee, which is vested in it by virtue of sections 3 and 6, instead of limiting and restraining the words of present grant. "There must be a precedent rightful or wrongful estate in the person to whom the confirmation is made in his own or another's right, or at least he must have the possession of the thing whereof the confirmation is made, as a foundation for the confirmation to work upon." Smith on Real and Personal Prop. 561; Pres. Shep. T. 312. Keeping in view the above definition of a confirmation, we must therefore conclude that section 4, in providing therefor, recognizes just what the act without this section in fact is, viz., a grant upon condition subsequent.

The fallacy of the appellant's argument, in a great measure, arises from confounding the usual office of a patent, which in most cases is the original conveyance of the title to government lands, with its office in those cases where the act is itself the grant, and the purpose and object of the patent is designated in the act or determined by a proper construction of its provisions. Here its purpose is not that of an original title, but that of the con-

firmation of a title already bestowed. Its office is to discharge the conditions attached to the grant, and extinguish the right of forfeiture for breach thereof, just as fast as certain portions of the road are completed in accordance with the terms of the act. After patents have issued for lands adjacent to and coterminous with such completed portions of the road, then the government can only cause a forfeiture for breach of the condition imposed by the act of the remaining portions of the grant adjacent to and coterminous with the uncompleted portions thereof. This construction of the act is to accomplish that intention which is expressed in the preamble and body of the act itself, viz., to assist in the construction of the road.

Again, to hold that the patent is the original conveyance does violence to the recitals of the preamble, viz., that the act itself grants, and that the grant is of the date of the approval thereof. It deprives of their usual and accepted authorized meaning the words of present grant contained in the third section, viz., "that there be, and hereby is, granted," which, when employed in a similar connection as that in which they are used in this act, have been uniformly held to be the highest evidence of title, and to import possession and livery of seizin. It has the same effect upon the words "hereby granted" that is, granted by this act, contained in section 6. It renders null and void the exclusive power and right of the grantee to sell the land which is conferred in section 6, which is in the following language: "And the odd sections of land hereby granted shall not be liable to sale or entry or pre-emption before or after they are surveyed, except by said company as provided in this act." This section provides that the survey shall be made after the general route is fixed, and as fast as may be required by the construction of the road. It precedes the issue of the patent. This power given to the company, to sell the lands designated before the issue of the patent, is itself

an interpretation by congress of its intention to bestow a present grant, contained in section 3.

To hold that the patent is the original conveyance, and that the words of section 3 do not create a present grant, is also inconsistent with the provision that when the lands are surveyed the odd sections are relieved from the operation of the homestead and pre-emption laws, while they are extended to the even sections, which are reserved to the government. The prevention of the operation of the above laws as to the odd sections is not reasonably reconcilable with any other hypothesis except that the government has parted with its title thereto.

The case of *Rice* v. *The Railroad Co.* 1 Black, 358, is referred to by appellant to support the position that the title does not pass to the company until the issuing of the patent. In that case it was held that an act giving lands to the territory of Minnesota, to assist in the construction of a railroad, containing the words " that there shall be, and is hereby, granted," etc., taken in connection with another provision in the act, " that no title should vest in the territory, nor any patent issue for any part of the lands, until a continuous length of twenty miles of the road should be completed," did not pass the title to the territory. The principal reason given by the court for this decision was that by express provisions of the act no title should vest in the territory, nor any patent issue for any part of the lands, until a continuous length of twenty miles of the road should be completed.

That this was the view of the supreme court is apparent from the language of Field, J., in *Schulenberg* v. *Harriman*, 21 Wall. 44, which is as follows: "The case of *Rice* v. *Railroad Co.* 1 Black, 358, does not conflict with these views. The words of present grant in the first section of the act, there under consideration, were restrained by a provision in a subsequent section that the title should not vest in the territory of Minnesota until the road, or a portion of it, was built."

The rule for this construction was given in this case by Mr. Justice Clifford, in the following language: "Whenever the words of a statute are ambiguous, or the meaning doubtful, the established rule of construction is, that the intention must be deduced from the whole statute and every part of it. Intention, in such cases, must govern when it can be discovered, but in the search for it, the whole statute must be regarded, and, if practicable, so regarded as to give effect to every part." The rule thus cited for holding as the court 'did in that case sustains the position which we maintain in this. For if the rule that the intention must control when discoverable (and it is the duty of the court, if possible, to discover the intention), and every part of a statute given its proper effect, is invoked to prevent the rejection or disregard of the language " that no title shall vest," etc., when contained in the same act with words of present grant, certainly the same rule is applicable to prevent the rejection or disregard of the words of recital in the preamble, and of the words of present grant in sections 3 and 6, of the power to sell before the issue of the patent, and the relief of the odd sections from the operation of the homestead and pre-emption laws, as also provided for in section 6.

"The true construction of the act, therefore, in our opinion, is that the patent is the original conveyance of the lands, and that the act itself must amount to a contract to convey, as certain portions of the road are completed, and, therefore, up to and until the issue of the patent the respondent has only what the appellant terms an 'incorporeal right' in the lands, but that, until the patent issues, it is a grant *in præsenti*, upon condition subsequent, which the patent confirms and renders unconditional and absolute in the grantee."

We have considered the main question in this case as if it had not already been decided by a court whose authority is binding upon us; but we think it is no longer

an open question.   In the case of *The M. K. & T. R. R. Co.* v. *K. P. R. R. Co.* 97 U. S. 491, from which we have before quoted, one of the principal questions before the supreme court was in relation to the construction of an act of congress in very many respects similar to the one in question, viz.:   An act entitled "An act to aid in the construction of a railroad and telegraph line from the Missouri river to the Pacific ocean," etc., approved July 1, 1862.   12 Stat. at Large, 489.   We have already given, from the language of Mr. Justice Field, who delivered the opinion of the court, a brief statement of the prominent provisions of this act.   In addition thereto we will state the language used in relation to the patents, which followed the language of present grant, which was: "Patents shall issue conveying the right and title to sail lands to said company. . . . And patents shall in like manner issue as each forty miles of said railroad . . . are completed."   Section 4 of above act.

It will be observed that the word used in connection with the word "patents" is "conveying," being the same word used in connection with the same term in the latter portion of section 4 of the act under consideration, which, as we have already indicated, uses both the words, "confirming the right and title" and "conveying," in connection with the term "patents."   Nevertheless the supreme court in this case held that the act passed to the company a present interest in the lands, to be designated within the limits there specified.   Similar terms in other acts of congress granting lands have uniformly received the same interpretation, unless accompanied with clauses restraining their operation.   "That the grant was of sections to be afterwards located, and their location depended upon the route to be afterwards established; when that was settled the location became certain, and the title that was previously imperfect acquired precision and attached to the lands;" that "when the location was made and the sections granted ascer-

tained, the title of the plaintiffs took effect as of the date of the act,  .  .  .  having the same operation upon the sections as if they had been specifically described in it;" that, "as between the United States and the plaintiffs, the right of the latter to a patent became perfect on the approval by the president of the report of the commissioners" on each completed portion of the road. Let the above language, "that similar terms in other acts of congress granting lands have uniformly received this interpretation, unless accompanied with clauses restraining their operation," be now observed.

Our attention has been called to the opinion of Deady, J., of the United States district court of Oregon, in the case of *The United States* v. ——, where it is held that "the clause in section 4 of the act under consideration" (the same which is in question in this case), "concerning the lands granted to the corporation" (the respondent in this case), "as each section of twenty-five miles of the road is constructed and accepted by the grantor, does restrain the operation of the words of present grant in section 3, so that it appears manifest that, while it was the intention of congress to set apart and devote the lands in question absolutely to the construction of the Northern Pacific Railroad, yet it did not intend to part with the title to them until and only so fast as they were earned by the completion of the work." Reference is made to support this position to the case of *Rice* v. *Railroad Co.* 1 Black, 348, above referred to, where it was held, as stated in the above opinion of Deady, J., that the words of present grant, viz., "there is hereby granted," did not pass the title to the territory, taken in connection with another provision in the act, to the effect that no title should vest in the territory until twenty miles of the road were completed and accepted by the secretary of the interior, when a patent should issue for so much of the grant, and so on, as often as twenty miles of the road were so completed and ac-

cepted." The learned judge (Deady, J.) further says: "And although there is no express declaration in the Northern Pacific act that the title shall vest in the corporation until the completion of the road, or portions of it, yet the legal effect of the clauses therein, which provided for conveying and confirming the title of the company by patent only upon the completion of the road, or portions of it, is the same."

The act of congress referred to in the case of *M. K. & T. R. R. Co.* v. *K. P. R. R. Co.*, as we have already seen, contains a provision that "patents shall issue conveying the right and title to said lands," under very similar circumstances as provided for the issue of patents to the Northern Pacific Railroad Company by the act in question. We can fairly presume that the case of *Rice* v. *Railroad Co.*, *supra*, was in the contemplation of the learned judge (Field, J.) when he used the language to which we have called special attention, he having written the opinion in *Schulenberg* v. *Harriman*, *supra*.

By positive implication, therefore, it is held, by the use of the above language, in relation to an act of congress containing words of present grant, with also thereafter a provision for the issue of "patents" "conveying the right and title," etc., that such a provision does not restrain or limit the words of present grant.

Our conclusion, therefore, both upon reason and authority, is that the title of the respondent took effect at the date of the approval of the act of congress; that the location of the route and the survey of the lands gave precision to that title, and caused it to attach to the particular section, as of the date of the approval of the act, as fully as if such particular section had been designated in the act; that the character of the title is that of a grant upon conditions subsequent; and that the office of the patent is to confirm the title as certain designated portions of the road are completed and reported upon.

by the commissioners, and render it absolute and unconditional. *Ferris* v. *Coover*, 10 Cal. 589.

The grant, being by act of congress, is the highest evidence of title, importing, in the case presented, possession and livery of seizin, and is sufficient, in connection with the other allegations of the complaint, to sustain ejectment.

*Judgment affirmed.*