| 6 | 65 |
| 6 | 364 |
| 7 | 406 |

| 6 | 65 |
| 23 | 420 |

NORTHERN PACIFIC RAILROAD Co., appellant, *v.* LILLY, respondent.

NORTHERN PACIFIC RAILROAD COMPANY — *Land grant — Act of congress construed.*— The act of congress granting lands in aid of the Northern Pacific Railroad is not only a law but a conveyance, and imports a present and immediate transfer of title to the company of the lands described in the grant, which takes effect by relation as of the date of the act, whenever the lands so conveyed are designated by the definite location of the line of the road.

SAME — *Fixing general route of road — Reservation of land — Right to maintain ejectment.*— Under such act, whenever the general route of the road had been fixed the lands thereby granted were re-

served from sale and held for the company, whether before or after the same had been surveyed; and thereafter no person could acquire any title thereto or interest therein, save by the act of the company. Such reservation was equivalent to a sale of the lands to the company, to the extent of giving it the right to protect the same as against all other persons. Having the exclusive right to sell the lands and to deliver possession, the company, to all intents and purposes, had the possession; and this, accompanied with the right to sell and to convey title, gave the company the right to protect their possession by action of ejectment or otherwise.

PLEADING — *Ejectment* — *Averments of complaint.*— A complaint in ejectment is good if it aver the seizin of the plaintiff, the possession of the defendant at the time of the commencement of the action, and the withholding of the possession.

### *Appeal from First District, Custer County.*

THE opinion states the facts.

SANDERS, CULLEN & SANDERS, for the appellant.

CONGER & Cox, for the respondent.

WADE, C. J. This is an action in the nature of ejectment, brought by the plaintiff and appellant to recover the possession of certain lands from the defendant and respondent. A general demurrer to the complaint, for that it did not state a cause of action, was sustained, and the plaintiff abiding its complaint, judgment was rendered accordingly for the defendant.

From the complaint it appears that in the year 1864 the government, by act of congress, granted certain of the public lands to the plaintiff in aid of the construction of a railroad from Lake Superior to Puget's Sound; that the general route and line of the road, opposite to and along the premises in controversy, which are within the boundaries of the grant, was fixed on the 21st day of February, 1872, and a map and plat thereof filed with the secretary of the interior, in the office of the commissioner of the general land office, and that all lands included within the grant in said territory were thereupon withdrawn from sale and pre-emp-

tion except by the plaintiff, as provided in said act; that on the 19th day of May, 1881, the line of said road was by plaintiff definitely fixed near to said general route opposite to and along said premises, and within the distance of two miles therefrom, and a plat showing the definite location of the line of said railroad was thereafter, on the 25th day of June, 1881, filed in the office of the commissioner of the general land office; that said road was constructed on said line along and opposite to said premises on or about the 15th day of December, 1881, and approved and accepted by the government on the 30th day of September, 1882; that on the 21st day of February, 1872, said premises were public lands, not reserved, sold, granted or appropriated otherwise than by said act of congress in granting certain of the public lands in aid of the construction of said railroad, and that thenceforth the said premises were reserved to and were the property of the plaintiff; and that the plaintiff, since the time of said road was so definitely fixed, has been the owner of, seized in fee, and entitled to the possession of said premises. It further appears that the defendant, on or about the 1st day of July, 1878, entered upon said premises and ousted and ejected the plaintiff therefrom, and ever since has withheld the possession thereof.

The only difference between the complaint and the one in the case of *The Northern Pacific Railroad Co.* v. *Majors*, 5 Mont. 111, is, that in the Majors case the entry and ouster by the defendant is alleged to have taken place subsequent to the time when the line of the road was definitely fixed, and a plat thereof filed with the commissioner of the general land office, while in the present complaint the entry and ouster is alleged to have taken place subsequent to the time when the general route of the road was fixed, and the lands withdrawn from sale and pre-emption, and prior to the time when the line of the road was definitely fixed, and a plat thereof filed with the commissioner of the general land office.

The Majors case, and the authorities upon which it rests, conclusively determine that the act granting lands in aid of the Northern Pacific Railroad is not only a law, but a conveyance of the highest character, and imports a present and immediate transfer of title to the company of the lands described in the grant, which takes effect by relation as of the date of the act, whenever the lands so conveyed are designated by the definite location of the line of the road. Before that time the grant is said to be afloat, but the location of the road anchors it, and causes the grant to take hold of and attach itself to the alternate sections of land along the designated line of location, the same as if these sections were named in the act.

The lands embraced within this grant to the Northern Pacific Company consisted of alternate sections designated by odd numbers on each side of the line of the proposed road, and it was provided that whenever, prior to the time when the line of the road was definitely fixed, any of said sections, or parts of sections, should have been granted, sold, reserved, occupied by homestead settlers or pre-empted, or otherwise disposed of, other lands should be selected by said company in lieu thereof, under the direction of the secretary of the interior, in alternate sections, and designated by odd numbers, not more than ten miles beyond the limits of said alternate sections. These limitations upon the grant are similar to those found in numerous other grants of land by congress in aid of railroads. Their object is obvious. The sections granted could be ascertained only when the routes were definitely located.

This might take years, the time depending somewhat upon the length of the proposed road and the difficulties of ascertaining the most favorable route. It was not for the interest of the country that in the meantime any portion of the public lands should be withheld from settlement or use, because they might, perhaps, when the route was surveyed, fall within the limits of the grant. Congress, therefore, adopted the policy of keeping the public lands open to occupa-

tion and pre-emption and appropriation to public uses, notwithstanding any grant it might make, until the lands granted were ascertained; and provided that, if any sections settled upon or reserved were then found to fall within the limits of the grant, other land in their place should be selected. Thus settlements on the public lands were encouraged without the aid intended for the construction of the roads being thereby impaired. *Railroad Co.* v. *Baldwin,* 103 U. S. 426.

The grant to this company, however, contains a limitation upon the right to settle upon or pre-empt any of the lands included within the grant, after the general route of the road has been fixed. After that event transpires said lands are reserved from sale and held for the company, whether before or after the same have been surveyed; and if it should be held that the absolute title of the company did not attach until the definite line of location had been fixed, still, the land having been reserved from sale, except by the company, no person could thereafter acquire any title thereto or interest therein save by the act of the company.

Section 6 provides that the president of the United States shall cause the lands to be surveyed for forty miles in width on both sides of the entire line of said road, after the general route shall be fixed, and as fast as may be required by the construction of said railroad; and the odd sections of land hereby granted shall not be liable to sale, or entry, or pre-emption, before or after they are surveyed, except by said company as provided in this act, but that the general pre-emption laws shall be, and the same are, extended to all other lands on the line of the road when surveyed, except the lands granted to the company.

This section is itself a grant, and a legislative reservation and withdrawal of the lands granted from sale or pre-emption except by the company.

After the general route of the road has been fixed, it provides that the odd sections "hereby granted" shall be reserved from sale or pre-emption, except by the company;

that is to say, whenever the odd sections are designated by fixing the general route of the road, the grant attaches and becomes certain and absolute. "And the odd sections of land hereby granted shall not be liable to sale before or after they are surveyed," except by the company. This prohibition is absolute. This land is reserved from sale by congress. It is a legislative reservation, and takes effect whenever the general route of the road is fixed; and thereafter no person could acquire any right or interest in the land reserved from sale except by act of the company, the grantee of the government.

The averments of the complaint are, that after the passage of said act the general route of the line of said road through the territory of Montana was fixed and adopted by the company on the 21st day of February, 1872, and a plat and map thereof filed with the secretary of the interior in the office of the commissioner of the general land office, and that the said secretary did, therefore, on said day make an order withdrawing all the sections of land designated by odd numbers, in the said act referred to, to the amount of twenty alternate sections per mile on each side of said railroad line through said territory, from sale, entry, and pre-emption, except by the plaintiff, as in the act provided.

This act of the secretary in withdrawing said sections from sale was not necessary, for congress had declared that they should not be liable to sale after the general route of the road had been fixed. This declaration by congress was a reservation of the lands, whenever the event transpired that caused it to take effect.

It must be presumed that the president, after the general route of the road had been so fixed, caused said lands to be surveyed, as provided for in section 6 of said act, but whether he did or not, the lands were reserved from sale, except by the company, both before and after they had been surveyed, and this reservation took place by operation of law and as in said act provided.

This reservation of said lands from sale and pre-emption,

except by the company, protected the lands for the company, and would so continue to protect them until the order making said reservation had been revoked and said act repealed.    Such a reservation made by operation of law was equivalent to a sale of the lands to the company to the extent of giving to the company the right to protect the same as against all other persons.    Having the exclusive right to sell the lands and to deliver possession thereof to the purchaser, the company, to all intents and purposes, had the possession, and this, accompanied with the right to sell and to convey title, gave the company the right to protect their possession by action in ejectment or otherwise, against every and all other persons.

The reservation of said lands from sale and pre-emption, except by the company, by operation, and in pursuance of law, was the consummation of the grant to the company, and the title so conveyed related back to the date of the grant, and was equivalent to a title in fee.    After such reservation in behalf of and for the benefit of the company, consequent upon the general route of the road having been fixed, the grant was no longer afloat, but it attached itself to and took hold of the designated sections as if they had been named in the act.

All that the act and all that the decisions require, in order to consummate the grant, is that the alternate sections be designated.    Fixing the line of the general route of the road does cause the alternate sections along said line to be designated, and to be reserved from sale and pre-emption, except by the company; and fixing the line of definite location, if the same is along the line of the general route, as in this case, does not add anything to the efficacy of the grant.    That only does what has already been done before, by operation of law, whenever the general route of the road has been fixed.

The defendant entered upon the premises in question, which are situate within the boundaries of the grant to plaintiff, and within two miles from the line of the general

route and definite location of the road, in 1878. At that time the line of the general route of the road had been established, and the alternate sections, in consequence thereof, and by operation of law, had been withdrawn from sale and pre-emption except by the plaintiff. It was not possible, therefore, at that time, for the defendant to have acquired any interest in or title to said premises, which were a part of one of the alternate sections aforesaid, save from the plaintiff, who owned and held the title thereto. The government could convey no title or right, for the reason that the premises had been previously reserved and withdrawn from sale and pre-emption for the benefit of the plaintiff, who held the exclusive right to sell and dispose of the same. The defendant, therefore, when she entered upon said premises and ousted the plaintiff, was a mere trespasser, without color of right or authority; and she claims no rights by adverse possession. Under our decisions a complaint in ejectment is good, if it aver the seizin of the plaintiff, the possession of the defendant at the time of the commencement of the action, and the withholding of the possession. *McCauley* v. *Gilmer*, 2 Mont. 202; *Herbert* v. *King*, 1 id. 475. This complaint contains these necessary averments, and the demurrer thereto ought to have been overruled.

*Judgment reversed, and remanded.*