(LOCAL LAW.)

## RUTHERFORD v. GREENE's heirs.

A question relative to the title of the late Major-General Nathaniel Greene, to 25,000 acres of land given to him, within the bounds of the land reserved for the use of the army, by the 10th section of the act of the legislature of North Carolina, passed in 1782, as a mark of the sense entertained by that state of his eminent services

THIS was a bill in chancery, filed in the circuit court for the district of Tennessee, by the appellant, against the heirs of the late Major-General Greene.

Feb. 24th.        The cause was argued by Mr. *Campbell* and Mr. *Harper,* for the appellant, and by Mr. *Law* and Mr. *Jones,* for the appellees.

March 4th.        Mr. Chief Justice MARSHALL delivered the opinion of the court.

As this case depends entirely on the validity of Greene's title, the court will notice only so much of the record as respects that title.

In the year 1777 the state of North Carolina opened a land-office, for the purpose of selling all the vacant lands east of a line described in the act.

In the year 1780 an act passed, reserving a certain tract of country for the officers and soldiers of the line of that state.

This act is lost.

In the year 1782 an act passed, " for the relief of the officers and soldiers in the continental line, and for other purposes therein mentioned." This act gives certain specified quantities of land to the officers and soldiers; then the 7th section commences thus: " And, whereas, in May, 1780, an act passed at Newburn, reserving a certain tract of country to be appropriated to the aforesaid purposes, and it being represented to this present assembly, that sundry families had, before the passing the said act, settled on the said tract of country, Be it enacted," &c. The section then proceeds to grant 640 acres of land to each family which had so settled. The 8th section appoints commissioners to lay off, in one or more tracts, the land allotted to the officers and soldiers. The 10th section enacts, " that 25,000 acres of land shall be allotted for, and given to, Major-General Nathaniel Greene, his heirs and assigns, within the bounds of the lands reserved for the use of the army, to be laid off by the aforesaid commissioners, as a mark of the high sense this state entertains of the extraordinary services of that brave and gallant officer."

This is the foundation of the title of the appellees.

On the part of the appellant it is contended, that these words give nothing. They are in the future, not in the present tense; and indicate an intention to give in future, but create no present obligation on the state, nor present interest in General Greene.

The court thinks differently. The words are words of absolute donation, not indeed of any speci-

fic land, but of 25,000 acres in the territory set apart for the officers and soldiers.

" Be it enacted, that 25,000 acres of land shall be alloted for and given to Major-General Nathaniel Greene." Persons had been appointed in a previous section to make particular allotments for individuals, out of this large territory reserved, and the words of this section contain a positive mandate to them to set apart 25,000 acres for General Greene. As the act was to be performed in future, the words directing it are necessarily in the future tense. "Twenty-five thousand acres of land shall be allotted for, and given to, Major-General Nathaniel Greene." Given when? The answer is unavoidable—when they shall be allotted. Given how? Not by any future act;—for it is not the practice of legislation to enact, that a law shall be passed by some future legislature :—but given by force of this act.

It has been said, that, to make this an operative gift, the words " are hereby" should have been inserted before the word " given;" so as to read, " shall be allotted for, and are hereby given to," &c. Were it even true that these words would make the gift more explicit, which is not admitted, it surely cannot be necessary now to say, that the validity of a legislative act depends, in no degree, on its containing the technical terms usual in a conveyance. Nothing can be more apparent than the intention of the legislature to order their commissioners to make the allotment, and to give the land when allotted to General Greene.

The 11th section authorizes the commissioners to

appoint surveyors, for the purpose of surveying the lands given by the preceding sections of the law.

In pursuance of the directions of this act, the commissioners allotted 25.000 acres of land to General Greene, and caused the tract to be surveyed. The survey was returned to the office of the legislature, on the 11th of March, in the year 1783. The allotment and survey marked out the land given by the act of 1782, and separated it from the general mass liable to appropriation by others. The general gift of 25,000 acres, lying in the territory reserved for the officers and soldiers of the line of North Carolina, had now become a particular gift of the 25,000 acres, contained in this survey.

Against this conclusion has been urged that article in the constitution of North Carolina which directs that there should be a seal of the state to be kept by the governor, and affixed to all grants. This legislative act, it is said, cannot amount to a grant, since it wants a formality required by the constitution.

This provision of the constitution is so obviously intended for the completion and authentication of an instrument, attesting a title previously created by law, which instrument is so obviously the mere evidence of prior legal appropriation, and not the act of original appropriation itself, that the court would certainly have thought it unnecessary to advert to it, had not the argument been urged repeatedly, and with much earnestness, by counsel of the highest respectability.

After urging that these lands were not positively

granted to General Greene, the counsel for the appellant proceeded to argue that it was in the power of the legislature to retract its promise, and that the legislature had retracted it.

Before attempting the difficult task of describing the limits of the legislative power in cases where those limits are not fixed by a written constit. ion, the court will proceed to inquire whether the government of North Carolina has, in fact, revoked its promise, or recalled its gift.

At a session, begun on the 12th of April, 1783, the assembly passed " an act for opening the land office," thereby extending the line describing the country in which lands might be entered so far west as to comprehend the territory reserved for the officers and soldiers of the North Carolina line.

The 11th section of this act contains a proviso ~aving from entry the lands within the bounds reserved for the officers and soldiers.

At the same session an act was passed " to amend the act for the relief of the officers and soldiers of the continental line, and for other purposes."

The first six sections of this act prescribe the mode of individual appropriation, and of obtaining titles.

The 7th section " For prevention of disputes," enacts, " that the officers and soldiers aforesaid, shall enter and survey the lands within the following lines, Beginning," &c.

This section, it is said, changes the place reserved, and marks out a new territory for the officers and soldiers. It is, then, contended, that this act, and

the preceding act for opening the land office, are to be construed together, and the proviso of the 11th section of that act applied to the 7th section of this; by which operation the whole territory before reserved for the officers and soldiers, including the land surveyed for General Greene, is opened for entry.

The court does not concur with the counsel fo the appellant in any part of this argument.

There is nothing in the law leading to the opinion that the place reserved for the officers and soldiers was changed. The fair construction of the acts is that the reserve was restricted to narrower limits, not transferred to different ground.

It has been contended, that the court is restrained from giving this construction to the acts under consideration, because the bill avers that the place was changed, and the demurrer admits the fact.

The court will not inquire whether this averment is founded on an apparent misconstruction of the law, and is, therefore, to be disregarded; or is the averment of a fact compatible with the law; because the fact itself does not essentially affect the case.

If the place in which lands were reserved generally for the officers and soldiers, but not individually appropriated, was changed; the individual appropriation made for General Greene, within their original limits, was not also changed. The act did not profess to remove him with them, and he con-

Vol. II. C c.

sequently remained on the same ground, protected by his pre-existing title, whatever it might be.

But it is contended, that his title was annulled by the general authority given in the 9th section of the act, to enter all the lands within the enlarged limits then opened to purchasers.

To this argument it is answered,

1st. That the 11th section reserves the land allotted to the officers and soldiers, then comprehending the land surveyed for General Greene, and,

2dly. That a general permission to enter lands within a given tract of country must, of necessity, be limited to lands not previously appropriated.

The positive exception contained in the 11th section, it is said by the appellant, must be applied to the land reserved to the officers and soldiers by the subsequent act changing their position; because the two acts must be taken together; and if so, there is no exception comprehending the lands of General Greene.

The two acts have distinct objects. The first opens a land office for the purpose of redeeming the public debt by the sale of lands; and the second prescribes the manner in which officers and soldiers are to obtain titles for lands given to them by the state, and amends an act passed at a previous session on the same day. The legislature has not considered the reserve in the first act as transferred into the second; but has, by the 8th section of the second act, re-enacted in a modified manner the prohibition intended for the protection of those for whom this reserve was expressly made.

But let it be conceded that the proviso of the 11th section was repealed by implication, when the position of the officers and soldiers was changed, and a new prohibition enacted and applied to the new reserve; still it would be difficult to maintain that this silent repeal, implied from the removal of the object for which it was originally and chiefly intended, should apply to another object originally preserved by the provision, and for which it continues to be necessary.

But the court does not found its opinion on this position, however well it may be supported by justice. The proposition is believed to be perfectly correct, that the act of 1783, which opened the land office, must be construed as offering for sale those lands only which were then liable to appropriation, not those which had before been individually appropriated. Whatever the legislative power may be, its acts ought never to be so construed as to subvert the rights of property, unless its intention so to do shall be expressed in such terms as to admit of no doubt, and to show a clear design to effect the object. No general terms intended for, property to which they may be fairly applicable, and not particularly applied by the legislature; no silent, implied, and constructive repeals, ought ever to be so understood as to devest a vested right.

But it is contended, that this construction of the acts of 1783 is forced upon us, because the rights of others, and not the right of General Greene, are exempted from the operation of that section which of-

fers for sale all the land within the described territory; and the exception of one object excludes others of the same character.

Without inquiring what would be the force of this argument, if, in point of fact, rights similar to those of General Greene were received, and his omitted, let the fact be examined.

The first reservation in the act for opening the land office, related to the lands of the Cherokee Indians.

Nothing could be more obvious than the necessity, as well as propriety, of prohibiting all entries on Indian lands lying within the boundary offered for sale, if the legislature intended they should not be entered. The Indian title was not derived from the state of North Carolina; and to infer from the recognition of this title, that others actually derived from the state, if not also recognized, are annulled, is not admitted to be correct reasoning.

The only other reserve in this act is of the land within the limits allotted to the officers and soldiers, and within these limits was the land surveyed for General Greene.

Our attention is next directed to the act to amend the act "for the relief of the officers and soldiers," &c. This act narrows the limits within which the military lands shall be surveyed, or changes them, so that, in either case, the lands of General Greene are no longer within them. Nothing can be more obvious than that provisions relating to lands within this particular territory can have no implied application to

a title previously acquired by General Greene to
lands not lying within it.

The 8th section of the act prohibits all persons
from entering lands within the bounds allotted to
the officers and soldiers.

The 9th section excepts out of this prohibition the
commissioners and surveyors, &c., appointed to lay
off the military lands, and prescribes the mode by
which they may appropriate and acquire title to
lands given to them by the legislature.

The 13th section enacts that Governor Martin
and David Wilson be entitled, agreeably to the re-
port of the committee, to two thousand acres of land
each, adjacent to lands allotted to officers and sol-
diers for which they may receive titles in the same
manner as the officers and soldiers.

The insertion of this reservation in this act leads
almost necessarily to the opinion that the lands
granted to Martin and Wilson were a part of those
to which the act related; and the words of the sec-
tion show that their title was acquired by this act.
By no course of just reasoning can it be inferred
from these permissions to make appropriations with-
in bounds not open to entry generally, that a vested
right to lands not lying within the limits to which
this act relates, is annulled.

It is clearly and unanimously the opinion of this
court that the act of 1782 vested a title in General
Greene to 25,000 acres of land, to be laid off within
the bounds allotted to the officers and soldiers, and
that the survey made in pursuance of that act, and
returned in March, 1783, gave precision to that title.

and attached it to the land surveyed. That his rights are not impaired by the acts of 1783, and the entry of the appellant, all of which are subsequent to his survey; and that it is completed by the grant which issued in pursuance of the act of 1784, and which relates to the inception of his title. The decree of the circuit court, dismissing the bill of the complainant, is affirmed, with costs.

Decree affirmed.