### CONWAY v. UNITED STATES et al.

(Circuit Court, D. Nebraska. January 7, 1907.)

1. DIVORCE—RIGHTS OF WIFE—LAND.

Where a trust patent for land previously allotted to Indians was issued to the male allottee after his marriage to the female allottee, the right of the wife to an equitable share of the property on her being divorced solely

on account of her husband's fault, was within the exclusive jurisdiction of the court granting the divorce, and a suit by the divorced wife to secure an interest in such land will not lie.

·.[Ed. Note.—For cases in·point, see Cent. Dig. vol. 17, Divorce, §§ 587, 589.]

2. INDIANS—LANDS—ALLOTMENT—RIGHTS OF ALLOTTEES.

Act Cong. March 2, 1889, c. 405, 25 Stat. 892, provided that to each member of the Ponca Tribe of Indians who was the head of a family, there should be allotted 320 acres of the Great Sioux Reserve, to every single person over 18 years of age, a one-fourth of a section, etc. The act also declared that on the approval of the allotment by the Secretary of the Interior he should cause trust patents to issue under which the United States should hold the land in trust for the allottee and his heirs for 25 years, etc. Complainant, a female member of the tribe more than 18 years old, was allotted 160 acres of land after the President's proclamation that the act was in full. force, as was also another Indian whom complainant subsequently married. The selections were approved, and more than four months after the President's proclamation for the purpose of extinguishing the Indian tribes, the parties were married, after which each of them made other separate applications in lieu of their previous applications, in order to get adjoining land, but the trust patent was by mistake made out in the name of complainant's husband for the entire land, as the head of the family. Held, that the·fact that complainant and her husband married before actual allotment and the issuance of a trust patent did not deprive complainant of the right to the land for which she applied, which became vested in her on the President's last proclamation, and that she was entitled to one-half the land patented to her husband.

## On Demurrer to the Bill.

The bill alleges: That by the provisions of the act of Congress approved March 2, 1889, it was. among other things, provided "that each member of the Ponca tribe of Indians then occupying a part of the Old Ponca reservation, within the limits of the Great Sioux reserve, sha'l be entitled to an allotment upon the said Old Ponca reservation, as follows: To each head of a family 320 acres; to each single person over eighteen years of age one-fourth of a section; to each orphan child under eighteen years of age one-fourth of a section; and to each other person under eighteen years of age then living one-eighth of a section." 25 Stat. 892, c. 405. Another section of the act provided that, "upon the approval of the allotments by the Secretary of the Interior,, he shall cause patents to issue therefor in the names of the allottees, which patents should be of legal effect and declare that the United States does and will hold the lands thus allotted for the period of twenty-five years in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or in case of his decease, of his heirs, according to the laws of the state or territory where such land is located, and at the expiration of said period the United States will convey the same, by patent, to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever." 25 Stat. 891, c. 405. That at the time·of the passage of said act, the complainant was a member of the Ponca tribe of Indians, who occupied the reservation in the state of Nebraska, and for a long time prior thereto. and for several years thereafter, she has always maintained her tribal relations with the said Ponca tribe of Indians. That she was born on the 26th day of July, 1870. and was, on the 2d day of March, 1889, living upon said Old Ponca reservation, within the limits of the Great Sioux reserve, in the said state of Nebraska, and was at the time an unmarried person more than 18 years of age. That shortly after the passage of said act of Congress of March 2, 1889, the United States, through its duly authorized officers, apprised and informed the Ponca Indians of the terms and provisions·of.the said act of Congress, to secure the consent of the tribe to the provisions of said act. That within six months after the passage of the act, the said Ponca tribe of Indians accepted the terms and provisions thereof. That about the month of July, 1889, the complainant, in conformity with the

provisions of said act of Congress, duly selected a tract of 160 acres of land within the said Ponca reservation, and duly notified the proper allotting agent of the United States of her said selection of said tract of land, and duly demanded of him that the same be allotted to her in severalty, according to the provisions of the said act of Congress of March 2, 1889, and the said selection so made by complainant was by the allotting agent of the United States duly approved.

The bill further charges: That the defendant, David Sherman, is also a member of said Ponca tribe of Indians, living at the time of the passage of the act, and long prior thereto, upon said reservation, and maintaining his tribal relations with the said Ponca tribe of Indians, and therefore entitled, under the provisions of said act of Congress, to an allotment in severalty of 160 acres of land, to be selected by him in said reservation. That some time in the summer of 1889 the said David Sherman did make such selection, which was approved by the allotting agent. That on the 13th day of June, 1890, the complainant and the said David Sherman were duly married in the state of Nebraska, and until the month of November, 1897, continued to be husband and wife. That immediately after their marriage they went to live at the home of the parents of Sherman, and while there living they agreed and decided between themselves that, as the allotments respectively selected by them were situated several miles apart, and for this reason too remote from each other to be used advantageously by each of them, they would try to select others. That thereupon the complainant, of her own volition, made the request to the proper allotting agent of the United States that, in lieu of land heretofore selected by her, she be allotted a different tract of 160 acres of land lying in said Ponca reservation, and described as follows: the south half of the northeast quarter and the north half of the southeast quarter of section 24, township 32 N., range 7 W., and the lots numbered 2 and 3 in section 19, township 32 N., range 6 W., said tract of land being at that time subject to selection and allotment to the members of said Ponca tribe, under the act of Congress. That this request of complainant was granted and approved by the allotting agent. That at the same time the said David Sherman agreed and declared that, in lieu of the 160-acre tract of land previously selected by him as aforesaid, he would select and take the remaining 106.31 acres of land within the metes and bounds aforesaid, and in addition thereto, in order to make up the 160 acres to which he was entitled, a tract of land more particularly described as follows: Lot 1 in section 2, township 32 N., range 9 W., being a part of the land previously selected by him. That thereafter said original selections were, in consideration of said new selections, canceled; and in the fall of the year 1890 the complainant and said David Sherman moved upon and took possession of the tract of land described as the south ½ of the northeast ¼ and the north ½ of the southeast ¼ of section 24, township 32 N., range 7 W., and the lots numbered 2 and 3 in section 19, township 32 N., range 6 W., and continued to make their home at that place until the year 1897. That after the cancellation of said original selections by the allotting agent, as above set forth, on the 14th day of October, 1890, the schedule of allotments of the lands as provided for in the act of Congress was finally completed, and, on the 22d day of October, 1890, by the acting Commissioner of Indian Affairs, deposited in the General Land Office of the United States, and approved by the Secretary of the Interior, and upon said schedule of allotments it was wrongfully made to appear that the said David Sherman, as the head of the family consisting of himself and complainant, had been allotted the lands last-above described, together with lot numbered 1 in section 2, township 32 N., range 9 W., but of which fact, complainant alleges she had no knowledge. That on the 26th day of May, 1891, a trust patent was by the United States issued, conveying said tracts of lands to David Sherman, which she says was erroneous, as they were each entitled to patents for 160 acres in severalty. That the trust patent was delivered to complainant and David Sherman together, and, with the consent of the said David Sherman, complainant took the same into her own possession, and it was understood and agreed between them that, in consideration of the premises, one-half of the land mentioned in said trust patent should belong to complainant and one-half to the said David Sherman, and that at the end

of the 25-year period mentioned therein one-half thereof should belong absolutely to complainant and one-half to David Sherman. That neither complainant nor the said David Sherman made any effort or took any steps to have the said trust patent corrected, so as to include both names therein as grantees because of said complete and mutual understanding, and for the further reason that they understood from what had been said by the duly authorized agent of the United States that the said trust patent was a mere preliminary paper, and that ultimately, at the end of the 25-year period, they each of them would receive 160 acres of land. That complainant and David Sherman jointly controlled and retained possession of said lands, and that David Sherman at all times conceded and admitted the right of complainant to one-half thereof. That in 1897 complainant, on account of divers cruelties of the said David Sherman towards her, and on account of the habitual drunkenness of the said Sherman, was duly awarded a decree of divorce from the bonds of matrimony by a court of competent jurisdiction of the state of Nebraska, and was by said decree of divorce awarded the care and custody of the three minor children of the complainant and the said David Sherman; but that since the granting of said divorce, said David Sherman has excluded complainant from the possession, occupation, and control of the said tracts of land, and within the last few years has denied the right of complainant to any of said lands or the profits or proceeds therefrom. That since then the defendant David Sherman has intermarried with the defendant Dora Sherman, and one child has been born of said marriage, who is now living. That she has repeatedly applied to the Department of the Interior of the United States to have the said trust patent corrected so as to include the name of complainant and David Sherman as grantees, and has repeatedly applied to the said Department of the Interior to compel the said Sherman to permit her to participate in the control, possession, and rents. profits and proceeds of said land with the said David Sherman, and the said Department of the Interior has refused to accord to her any relief whatever.

The prayer of the bill is for a decree adjudging her to be entitled to one-half of the lands described in said trust patent issued to David Sherman on the 26th day of May, 1891, and that as to one-half of the rights and benefits conveyed by the said trust patent, David Sherman be decreed to have received the same in trust merely for the complainant, and that said trust patent be corrected so as to include the names of complainant and David Sherman as grantees therein, and a decree for mesne profits and all proper relief.

The defendants demur to this bill.

J. W. Woodrough, for complainant.
A. W. Lane, Asst. U. S. Atty., for defendants.

TRIEBER, District Judge, by assignment from the Eastern District of Arkansas (after stating the facts). The contention on the part of complainant, that, owing to the fact that complainant was divorced from her husband without fault of her own, but solely on account of his faults, she is equitably entitled to some share of the property for the support of herself and the children, fruits of her marriage with David Sherman, cannot be sustained. That was a matter solely within the jurisdiction of the court which granted the divorce. Some reliance is placed upon Morrisett v. United States (C. C.) 132 Fed. 891, but that case is clearly distinguishable from the one at bar. There the husband, divorced for his misconduct towards his wife, sought to have a patent which had been issued to his wife, she representing herself to be unmarried when, in fact, she was married, adjudged to be held for his benefit. This the court refused to grant upon the sole ground that "He who seeks equity must do equity." The rights of the

parties having been once established by the allotment and the execution and delivery of the trust patent cannot be changed by anything that may happen thereafter.

The main question to be determined in this case is, when did the members of the Ponca tribe of Indians become entitled to the lands directed to be allotted to them by the act of 1889? On the part of the defendants, it is contended that no right, title, or interest whatever passed to the members of the tribe under that act until the allotment rolls had been approved by the Secretary of the Interior and the last proclamation of the President; and as this was not done until October, 1890, the complainant being then the wife of the defendant David Sherman, she was not entitled to an allotment in her own right, but that the defendant Sherman, being then a married man, was under the act entitled to an allotment of 320 acres as the head of a family. On the other hand, it is contended on behalf of the complainant that the act of 1889 was a grant in præsenti, and that there was vested in each of the members of the Ponca tribe an inchoate right to the lands to be allotted to them under the act, to become perfect by the allotment and the issuance of the trust patent. The learned counsel for the defendant relies principally upon the very able opinion of Judge Shiras in Sloan v. United States (C. C.) 118 Fed. 283. That opinion is entitled to the highest consideration, as it indicates the great care with which the issues involved had been examined by the learned judge; but a careful examination of the act of 1882, under which the Sloan Case arose, will clearly show that the language used in the two acts is not identical, and for this reason the Sloan Case is not conclusive of this case.

The act of Congress under consideration was not to go into effect immediately after its passage, but was to become operative only upon acceptance by the Indians in manner and form prescribed by the twelfth article of the treaty between the United States and the Sioux Indians concluded April 29, 1868 (15 Stat. 635), which acceptance and consent is to be made known by proclamation by the President of the United States. Section 28, Act March 2, 1889, c. 405, 25 Stat. 899. On February 10, 1890, the President issued his proclamation that the act had gone into effect, having been accepted by the Indians. 26 Stat. 1554. The proclamation of the President issued October 23, 1890 (26 Stat. 1559), after the lands had been allotted, was not for the purpose of confirming or in any other wise affecting the title of the Indians, but was in pursuance of section 13 of the act of Congress for the purpose of declaring the Indian titles extinguished and enabling the state of Nebraska to extend its jurisdiction over the same, in pursuance of the provisions of the act of March 28, 1882. As these acts of Congress are in effect treaties with Indians, having taken the place of treaties since treaties with Indian tribes were prohibited by Act March 3, 1871, c. 120, 16 Stat. 544, 566, they should receive the same construction as was given to Indian treaties. In construing the language used in a treaty or in an act of Congress dealing with the Indians, and which is to take effect only upon the acceptance by the Indians, it

is the well-settled law that the language used should never be construed to their prejudice.

In Worcester v. Georgia, 6 Pet. 515, 8 L. Ed. 483, Mr. Justice McLean, in his concurring opinion, said:

"To contend that the word 'allotted,' in reference to the land guarantied to the Indians in certain treaties, indicates a favor conferred rather than a right acknowledged, would, it seems to me, do injustice to the understanding of the parties. How the words of the treaty were understood by this unlettered people, rather than their critical meaning, should form the rule of construction." 6 Pet. 582.

In Rutherford v. Greene, 2 Wheat. 196, 198, 4 L. Ed. 218, the language used in an act of the Legislature of the state of North Carolina for the relief of the officers and soldiers in the continental line was: "Shall be allotted for and given to." These words, it was contended, gave nothing; that they were in the future, and not in the present tense, and indicated an intention to give in the future, but created no present obligation on the state nor present interest in the grantees; but it was held that, as the act was to be performed in the future, the words directing it were necessarily in the future tense, and although the land was undefined, the survey afterwards made in pursuance of the act gave precision to the title and attached it to the land surveyed. Chief Justice Marshall, in delivering the opinion of the court, said:

"Were it even true that the words 'are hereby given' would make the gift more explicit, which is not admitted, it surely cannot be necessary now to say that the validity of the legislative act depends in no degree on its containing the technical terms used in a conveyance. Nothing can be more apparent than the intention of the Legislature to order their commissioners to make the allotment and to give the land when allotted to Gen. Greene."

In United States v. Brooks, 10 How. 442, 13 L. Ed. 489, the language used in a treaty with the Caddo Indians was:

"Shall have their right to the said four leagues of land reserved for them, and their heirs and assigns, forever. The said lands to be taken out of the lands ceded to the United States by the said Caddo nation of Indians, as expressed in the treaty to which these articles are supplementary; and the said four leagues of land shall be laid off," etc.

It was held that these words gave to the reservees a fee simple to all rights which the Caddos had in those lands as fully as any patent from the government could make one.

In Freemont v. United States, 17 How. 542, 15 L. Ed. 241, a Mexican grant of a certain tract of land known as "Las Mariposas" was made, with certain undefined boundaries. The grant was of 10 square leagues, subject to certain conditions, and was to be made definite by future survey. The grant purported to convey a present and immediate interest, in consideration of previous public services, and it was held to be a grant in præsenti, upon the authority of Rutherford v. Greene, 2 Wheat. 196, 4 L. Ed. 218, that the conditions were conditions subsequent, but that noncompliance with them did not amount to a forfeiture of the grant.

In New York Indians v. United States, 170 U. S. 1, 18 Sup. Ct. 531, 42 L. Ed. 927, it was held that a provision in the treaty of June 15,

1838, which was as follows: "In consideration of the above cession and relinquishment, the United States agree to set apart a tract of country containing 1,824,000 acres of land as a permanent home for all the New York Indians * * * to have and to hold the same in fee simple to the said tribes or nations of Indians, by patent from the President of the United States, issued in conformity with the provisions of the third section of the act of May 28, 1830, with full power and authority in the said Indians to divide said land among the different tribes, nations or bands in severalty, with the right to sell and convey to and from each other"—was a grant in præsenti.

In Doe v. Wilson, 23 How. 457, 464, 16 L. Ed. 584, the question before the court was the effect of certain reservations to individual Indians made in the treaty of October 27, 1832, with the Pottawatomie tribe of Indians. By that treaty, the Indians ceded to the United States certain tracts of land therein described, reserving some to individual Indians. These reservations were described as one or two sections without any specific descriptions as to metes and bounds, as the lands were then unsurveyed. The treaty provided:

"The foregoing reservations shall be selected under the direction of the President of the United States, after the land shall have been surveyed, and the boundaries shall correspond with the public surveys." 7 Stat. 401.

Before the lands were selected or located by the President, one of the Indian reservees sold them, and it was claimed that his deed was a nullity, and nothing passed by it, as the lands had not been selected or located by the President and no patent issued therefor. But this contention was overruled by the court, the court holding that:

"Pet-chi-co [the Indian reservee] was a tenant in common with the United States, and could sell his reserved interest, and that when the United States selected the lands reserved to him and made partition, his grantees took the interest he would have taken if living."

This was approved and followed in Crews v. Burcham, 1 Black, 352, 17 L. Ed. 91, and numerous other cases since that time; the last being Jones v. Meehan, 175 U. S. 1, 20 Sup. Ct. 1, 44 L. Ed. 49.

The facts charged in the bill, and admitted to be true by the demurrer are, that on February 10, 1890, the date of the President's proclamation, the act of March 2, 1889, was then in full force, the complainant, as well as the defendant David Sherman, were unmarried adults over the age of 18 years; that each of them had selected 160 acres of land, which selections were then duly approved by the allotting agent of the United States; that on June 13, 1890, more than four months after the President's proclamation, they intermarried; that in the fall of 1890 the parties applied for different allotments, each of them making separate applications, which applications were approved by the allotting agent and the first selections canceled; that when the trust patent was delivered to them it was made out to David Sherman as the head of the family for the entire 320 acres, or, to be exact, 321.3 acres, comprising the selections made by the complainant and the defendant David Sherman separately; that, although the trust patent was delivered to complainant, she supposed it conveyed to her, for her

own use, one-half of the lands last selected by her and David Sherman, and that both of them jointly took and retained possession of all the lands; the defendant Sherman at all times conceding and admitting her right to an undivided half thereof until after the divorce, when he excluded her from the possession and for the first time denied her right to any of said lands or the profits thereof.

Applying the rules above enunciated to these facts, the conclusion reached is that, upon the proclamation of the President on February 10, 1890, the grant to each of the Indians became complete, and complainant being then an unmarried adult over 18 years of age, she became entitled to 160 acres of land, to be allotted to her thereafter. The fact that she married the defendant Sherman thereafter, and before the actual allotment and issuance of the trust patent did not deprive her of the right which became vested in her when the President's proclamation was issued, and the mistake in conveying the two tracts selected by them separately to the defendant Sherman as the head of a family, especially in view of the fact that complainant's ownership to an undivided half thereof was recognized by the defendant Sherman, could not affect her rights as against him.

For these reasons, she is entitled to the relief prayed, and the demurrer to the amended bill should be overruled.